In the United States District Court
for the Southern District of Texas
Houston Division

| | |
|---|---|
| Cedarstone Industry, LLC, | |
| *Plaintiff,* | Civil Action No. 4:21-cv-02719 |
| v. | |
| C4, LLC, | Jury Demanded |
| *Defendant.* | |

---

## DEFENDANT C4, LLC'S MOTION TO DISMISS OR TRANSFER

---

TO THE HONORABLE JUDGE KEITH P. ELLISON:

COMES NOW Defendant C4, LLC ("C4"), by and through undersigned counsel, and hereby respectfully moves to dismiss or, alternatively, transfer the Original Petition for Declaratory Relief (the "Declaratory Action") filed by Plaintiff Cedarstone Industry, LLC ("Cedarstone") to the U.S. District Court for the Western District of Missouri.

The Declaratory Action is duplicative of an action filed by C4 against Cedarstone which remains pending in the Circuit Court of Carroll County, Missouri, concerning Cedarstone's performance under the same commercial sales contract put at issue in the Declaratory Action. Further, as discussed herein, the Declaratory Action is an impermissible anticipatory lawsuit filed solely to deprive C4, the natural plaintiff, of its chosen forum while also presenting the very real possibility of inconsistent rulings and judgments given that Cedarstone's alleged breach of a sales contract is the primary issue in both pending actions. Allowing this matter to proceed functions only as a hinderance and disservice to judicial economy.

For these reasons and those stated herein, C4 respectfully moves the Court for its Order dismissing Cedarstone's improper, anticipatory Declaratory Action or, in the alternative, transfer the matter to the U.S. District Court for the Western District of Missouri.

## **FACTUAL BACKGROUND**

C4 is a Missouri licensed manufacturer of medicinal marijuana products which has its manufacturing plant located in Carroll County, Missouri. Medical use of marijuana was legalized in Missouri in 2018 through a ballot initiative and the first licensed sales began in October 2020. Focused on being one of the first-to-market producers of medical marijuana-infused products, C4 contracted with Cedarstone by agreement dated September 2, 2020, for the purchase and delivery of significant industrial cannabis extraction and production equipment (the "Sales Contract"). *See* Exhibit A, Sales Contract.[1] The Sales Contract set the total purchase price at $553,648.96 with a lead time of 14-16 weeks, or a delivery date between December 9, 2020 and December 23, 2020. For reasons still unclear, Cedarstone did not deliver the initial batch of equipment until April 8, 2021, or 31 weeks after the order date. As of the filing of this Motion, 363 days have passed since C4 placed its order and still it does not have a working manufacturing facility due to Cedarstone simply being unwilling or unable to provide C4 with the equipment in working condition which C4 ordered and which Cedarstone contractually agreed to provide.

By letter dated June 23, 2021, counsel for C4 alerted Cedarstone of the numerous defects in the equipment provided, attesting to the fact that what Cedarstone had

---

[1] The Sales Contract contains a non-disclosure provision. Accordingly, C4 is filing a Motion to File Exhibit Under Seal and will supplement the record as and when directed by the Court.

2

marketed to C4 as a fully integrated / fully-automated system simply did not work as delivered. *See* Exhibit B, Demand Letter.  By way of example only, Cedarstone's proposed system called for a 3-ton chiller for the falling film unit. Once assembled, it immediately became clear the chiller's size was woefully inadequate. Cedarstone acknowledged this deficiency and suggested C4 instead utilize a 10-ton chiller, with this significant plan deviation requiring C4 to incur significant build-out and engineering costs to accommodate the new, robust 10-ton chiller. Counsel's letter also alerted Cedarstone to C4's estimated lost profit due to its inability to operate the improper manufacturing equipment delivered by Cedarstone of $4,706,742.44. Counsel's letter concluded in making demand for $5,330,646.44 in full settlement and advising that if the offer was not accepted by July 2, 2021, "I have been authorized to proceed with legal action against Cedarstone Industry."

Cedarstone did not accept the settlement offer by July 2, 2021, and instead responded by correspondence dated July 8, 2021, contesting various contentions and allegations set forth in C4's demand letter, rejecting the offer of settlement, and advising that:

> In light of the above, and given C4's unreasonable conduct when it encountered problems in assembling the extraction system, Cedarstone concluded that an amicable resolution of this dispute cannot be reached without legal proceedings to determine the rights and liabilities of the parties. Accordingly, we have attached a copy of a Petition for Declaratory Relief, which has been filed in Harris County District Court.

*See* Exhibit C, Cedarstone Response.

Cedarstone had, in fact, abandoned settlement discussions and had filed the instant action on July 8, 2021, with Paragraph 13 confirming Cedarstone's receipt of C4's demand letter, and Paragraph 27 averring in part that, "[i]n this matter, C4 alleges that

Cedarstone has breached its contract and is liable for over [$]5,000,000 in damages." Of course, C4 has not alleged *anything* "in this matter," as C4 did not file suit in this forum. As it intended to do if pre-suit negotiations were not fruitful – as they proved not to be – C4 filed its Petition against Cedarstone in the Circuit Court of Carroll County, Missouri on August 27, 2021. *See* Exhibit D, Petition.

As the record makes abundantly clear – and as Cedarstone readily admits in its Original Petition for Declaratory Relief – this action was filed solely in anticipation of C4's Carroll County, Missouri action in an effort to improperly wrestle control away from C4 and deprive C4 of its chosen forum. Accordingly, based on the arguments and authorities discussed herein, C4 contends this improper declaratory judgment action should be dismissed or, in the alternative, transferred to the Western District of Missouri, and C4 respectfully requests the Court so find.

## LEGAL ARGUMENT AND AUTHORITIES

### A.    The Declaratory Action Should be Dismissed as an Improper Anticipatory Suit

Review of the brief record before the Court confirms Cedarstone filed its Declaratory Action solely for the purpose of "beating C4 to the courthouse steps" to deny C4 its preferred venue in which to litigate its breach of contract and express/implied warranty claims such that dismissal of this matter is proper and just. The Fifth Circuit is in accord with its sister courts in generally following the first-to-file rule, providing that, "when related case are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). However, courts will not apply the rule where one party files its lawsuit "in anticipation" of an impending suit

4

by the opposing party and there exists substantial overlap between the two suits. *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967).

Especially relevant in this matter is the maxim that courts of this circuit consistently hold that, where a declaratory judgment suit is filed in anticipation of a lawsuit seeking substantive, coercive relief – as is the case here – the declaratory judgment action should be, and is, dismissed.[2] *See, e.g., Pac. Emp'rs Ins. Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801, 804 (5th Cir. 1985) ("This Court has stated that a proper factor to consider in dismissing a declaratory judgment suit is whether the suit was filed in anticipation of another and therefore was being used for the purpose of forum-shopping") (citing *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 & n.3 (5th Cir.1983) ("Anticipatory suits are disfavored because they are an aspect of forum-shopping")); *Epic Tech, LLC v. Arno Resources, LLC*, 2020 WL 5351078, at *5 (W.D.Tex. Sept. 4, 2020) ("'[C]ourts in the Fifth Circuit have concluded that an anticipatory suit initiated for the purpose of obtaining a favored forum constitutes a compelling circumstance that justifies a deviation from the first-to-file rule'") (citation omitted); *TK Holdings, Inc. v. Ordonez*, 2017 WL 2923829, at *3 (W.D.Tex. July 6, 2017) (district courts will "not allow a party to secure a more favorable forum by filing an action for declaratory judgment when it has notice that the other party intends to file suit involving the same issues in a different forum"); *Paragon Industries, L.P. v. Denver Glass Machinery, Inc.*, 2008 WL 3890495, at *4 (N.D.Tex. Aug. 22, 2008 ("In these cases, deferring to the plaintiff's choice of forum 'create[s] disincentives to responsible litigation

---

[2] While Cedarstone's Declaratory Action seeks declaratory relief under the Texas Declaratory Judgment Act, "[a]fter removal, an action under the Texas Declaratory Judgment Act is construed as one brought under the federal Declaratory Judgment Act." *Honey Holdings I, Ltd. v. Alfred L. Wolff, Inc.*, 81 F.Supp.3d 543, 555 (S.D.Tex.2015) (internal citations omitted).

by rewarding the winner of a race to the courthouse'") (citation omitted*); Kinetic Concepts, Inc. v. Connetics Corp.*, 2004 WL 2026812, at *3 (W.D.Tex. Sept. 8, 2004) ("[T]here is a 'general policy that a party whose rights are [apparently] being infringed should have the privilege of electing where to enforce its rights'") (citation omitted); *909 Corp. v. Village of Bolingbrook Police Pension Fund*, 741 F.Supp. 1290, 1292 (S.D.Tex.1990) (courts will not allow a party to secure its preferred forum by filing a declaratory judgment action when it has notice that another party intends to file suit involving the same issues in a different forum).

The same analysis is utilized by Missouri federal courts, the forum which C4 respectfully asks the Court to transfer this matter in the event the Court denies C4's Motion to Dismiss.  *See, e.g., BASF Corp. v. Symington*, 50 P.3d 555, 557 (8th Cir. 1995) (the court is to realign the parties to reflect the actual controversy underlying the action, determine who is the "natural plaintiff," and if the other party's motive is to wrestle the choice of forum of the natural plaintiff, the action should be dismissed). In *Clockwork Home Services, Inc. v. Robinson*, 423 F.Supp.2d 984 (E.D.Mo.2006), the discussed the general disdain the 8th Circuit has for such improper declaratory judgment actions, stating:

> The Eighth Circuit has identified two "red flags" that may signal the existence of compelling circumstances [to dismiss], as follows: "1) the first-filed suit was filed after the other party gave notice of its intention to sue; and (2) the first-filed suit is for declaratory judgment, rather than for damages or equitable relief, therefore suggesting 'a race to the courthouse' in an attempt to preempt the natural plaintiff from his or her choice of forum."

*Id.* At 992 (citation omitted).

Here, C4's counsel sent Cedarstone a pre-suit demand letter dated June 23, 2021, which set forth C4's position on Cedarstone's failure to perform under the Sales Contract,

made a demand for a sum-certain amount of $5,330,646.44, and concluded that, should Cedarstone fail to accept the demand by July 2, 2021, counsel "ha[s] been authorized to proceed with legal action against Cedarstone Industry." *See*, Exhibit B, C4's Demand Letter, p.3. Counsel for Cedarstone responded via correspondence dated July 8, 2021, generally contesting C4's contentions in its demand letter, declining C4's demand, and concluding by advising that Cedarstone had that very day filed its Declaratory Action in Harris County District Court notwithstanding being put on notice that C4 was prepared to file suit in the event settlement negotiations were unfruitful. *See*, Exhibit C, Cedarstone's Response.

Courts routinely dismiss anticipatory declaratory judgment actions filed in bad faith under precisely these circumstances as duplicative, unnecessary, and improper. *See, e.g., Pac. Emp'rs Ins. Co.*, 751 F.2d 801 (affirming dismissal of first-filed anticipatory declaratory judgment action brought two months before coercive action); *TK Holdings*, 2017 WL 2923829 (dismissing anticipatory declaratory suit before second action filed); *Epic Tech, LLC v. Arno Resources, LLC*, 2020 WL 5351078 (W.D.Tex. Sept. 4, 2020) (dismissal of declaratory judgment action proper as plaintiff could raise same issues in defendant's pending coercive action); *Kinetic Concepts, Inc.* , 2004 WL 2026812 (dismissing anticipatory declaratory judgment action as an improper attempt to deprive defendant of its forum of choice); *Capco International, Inc. v. Haas Outdoors, Inc.*, 2004 WL 792671 (N.D.Tex. April 9, 2004) (dismissing anticipatory declaratory judgment suit in favor of suit filed by defendant shortly thereafter); *Lexington Ins. Co. v. Integrity Land Title Ins. Co., Inc.*, 721 F.3d 958, 967 (8th Cir.2013) (where a "parallel" state court action involving questions of state law is pending, federal court enjoys broad discretion in dismissing declaratory judgment lawsuit).

The record is straightforward, and the case law is consistent, in that the first-filed rule gives way when faced with an improperly filed declaratory judgment action. Cedarstone's Declaratory Action is the sort of improper anticipatory action filed solely to prevent C4 from litigating its claims against Cedarstone in the forum of its choosing. Consistent with the cases cited herein, C4 asserts the proper remedy is dismissal of this Declaratory Action and respectfully requests the Court so find.

**B.      Jurisdiction Should Also be Declined Pursuant to the *Trejo* Factors**

The Court should also dismiss this action upon application of the non-exclusive "*Trejo*" factors discussed below. "In determining whether the district court acted correctly [in dismissing a declaratory judgment action] it is important to consider the nature of a declaratory judgment." *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983). "The Declaratory Judgment Act, 28 U.S.C. §2201, confers no jurisdiction but is a procedural device designed to provide a new remedy to the federal court arsenal." *Id.* (citing *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239-40 (1937)). "The district court, however, is not required to provide declaratory judgment relief, and it is a matter for the district court's sound discretion whether to decide a declaratory judgment action." *Id.* (citations omitted). "As was stated in *Dresser Industries, Inc. v. Ins. Co. of North America*, 358 F.Supp. 327, 330 (N.D.Tex.), *aff'd*, 475 F.2d 1402 (5th Cir. 1973), the Declaratory Judgment Act 'gives the court a choice, not a command.'"

In *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir.1994), the Fifth Circuit identified seven nonexclusive factors for a district court to consider in deciding whether to decide or dismiss a declaratory judgment action:

(1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;

(2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

(3) whether the plaintiff engaged in forum shopping in bringing the suit;

(4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

(5) whether the federal court is a convenient forum for the parties and witnesses;

(6) whether retaining the lawsuit would serve the purposes of judicial economy; and

(7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

"In the declaratory judgment context, the normal principal that federal courts adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 389 (5th Cir.2003). District courts apply the *Trejo* factors in deciding whether to dismiss one pending suit in favor of another. *See, e.g., Sport Supply Group, Inc. v. T&G Products, Inc.*, 2009 WL 10677398, at *3 (N.D.Tex. Sept. 30, 2009). Each of the factors weighs in favor of dismissal.

Considering the first factor, there is a pending action in the Circuit Court of Carroll County, Missouri, in which all matters in controversy may be resolved, namely, whether Cedarstone has performed under the Sales Contract and, if not, the measurement of damages properly awardable to C4. To the contrary, should this Court find in favor of C4 on Cedarstone's narrow Declaratory Action, the issue of damages would remain pending. As to the second and third factors, as discussed above, the instant Declaratory Action was plainly filed in anticipation of C4's own lawsuit as was discussed in C4's Demand Letter, filed to deprive C4 of its choice of forum in Carroll County, Missouri.

As to the fourth and fifth factors, the Circuit Court of Carroll County, Missouri, is plainly the more convenient forum and it would be inequitable to deprive C4 of a forum of its choosing. C4 is a Missouri domestic limited liability company with its manufacturing facility located in Carroll County, Missouri, which is the situs of the entirety of defective commercial equipment upon which both C4's lawsuit and the instant Declaratory Action are predicated. Most documents and witnesses are located in Carroll County, Missouri, and as the equipment will undoubtedly be subject to expert inspections, a significant portion of discovery will occur in Missouri.

As to the sixth factor, judicial economy weights strongly in resolving both the liability and damage issues in the Missouri court. Any and all issues presented by Cedarstone in this Declaratory Action can be raised as affirmative defenses to C4's substantive Missouri lawsuit, the forum preferred by C4 and the forum in which C4 intended to litigate prior to Cedarstone prematurely and improperly filing the instant action. Finally, as to the seventh factor, while a state decree is not at issue, some of C4's claims do arise under and are governed by Missouri statutes, specifically, Missouri's promulgated version of the UCC – Article 2, and a Missouri court is therefore the best forum for those state statutes to be interpreted.

Review of the *Trejo* factors confirms the proper forum and judicial vehicle for the commercial dispute between the parties is C4's Petition filed in Carroll County, Missouri, and C4 therefore respectfully requests this Court exercise its inherent power and elect not to entertain Cedarstone's improper anticipatory Declaratory Action by dismissing the instant action.

### C. Alternatively, the Court Should Transfer Suit to the Western District of Missouri

Should the Court refrain from dismissing this Declaratory Action, C4 respectfully requests the Court transfer the case to the Western District of Missouri as such venue is the most convenient form for the matter to proceed. Under 28 U.S.C. §1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The statute's purpose is to provide this Court discretion to adjudicate motions for transfer according to an individual, case-by-case basis. *Matosky v. Manning*, 2007 WL 1512027, at *2 (W.D.Tex. May 18, 2007).

A district court should consider four private interest and four public interest factors when determining whether to grant a motion to transfer. *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir.2004). The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir.2004). Further, the public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems regarding conflict of laws or the application of foreign law. *Id.*

Here, as concerns the private factors, C4, the recipient of the commercial equipment at issue, has its manufacturing facilities in Carroll County, Missouri, where all of said equipment presently resides. C4's employees and all engaged technicians who have

11

been endeavoring to make the defective equipment perform who are likely to be witnesses are likewise located in Carroll County, Missouri, as is the documentation and other information related to the defective equipment. Due to the geographic limitations of the Court's subpoena power under Fed.R.Civ.P. 45(c), the attendance of these witnesses at trial may not be compelled, as opposed to the few corporate representative(s) Cedarstone may elect to disclose who would be subject to Rule 30 depositions and would otherwise be required to appear at trial. Further, those witnesses willing to voluntarily attend are likewise in Missouri or in the Midwest (e.g., Polyscience Senior Technical Support Specialist Luis Lazcano and Sales Manager Ken Willens who assisted in troubleshooting and in procuring a replacement for a low temperature cooler, both located in Illinois). The practical factors which dictate the relative ease of fully litigating a dispute in the most expeditious and inexpensive manner therefore militate in favor of transfer to the Western District of Missouri.

With respect to the public interest factors, the issues put forth in the Carroll County, Missouri lawsuit (and the instant action as well) turn on whether Cedarstone fully performed under the Sales Contract, issues which can most efficiently be addressed in the venue which presently houses the equipment at issue. As noted above, C4 is possessed with a Missouri license to produce medical marijuana-infused products, and C4's ability to serve Missouri patients continues to be hampered by Cedarstone's failure to provide C4 the correct, bargained-for industrial production machinery necessary to manufacture such products. Missouri, therefore, has a tremendously strong interest in having such localized issues decided in a Missouri courtroom. Further, as the contract issues will, in large part, be governed by Missouri's Uniform Commercial Code – Sales (R.S.Mo. §400.2-101, *et seq.*), while this Court can undoubtedly navigate the Missouri Uniform

12

Commercial Code, the Western District of Missouri will be significantly more familiar with Missouri's interpretation of said statutes.

Weighing the eight factors set forth in *In re Volkswagen AG* conforms that, in the event the Court refrains from dismissing the instant Declaratory Action, the proper forum for the matter to be adjudicated is the Western District of Missouri, and should dismissal found to be improper, C4 respectfully requests the Court so transfer the matter.

<u>**CONCLUSION**</u>

As Cedarstone concedes in its Original Petition, this lawsuit is an improper, anticipatory suit filed immediately after Cedarstone received a pre-litigation demand coupled with a notice that suit by C4 was imminent designed solely to preempt C4 from proceeding in its preferred forum in Carroll County, Missouri. The numerous cases offered herein confirm the propriety of this Court proceeding with dismissing the action as one being filed in bad faith, as Cedarstone has a forum in which to defend itself against the breach of contract claims it discusses in the instant action. Finally, in the event the Court deems dismissal improper, the factors to be considered in determining a proper forum confirm the matter should be transferred to the Western District of Missouri.

WHEREFORE, Defendant C4, LLC respectfully moves the Court for a dismissal of this action or, in the alternative, a transfer to the U.S. District Court of the Western District of Missouri and for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Brown Sims

By: _/s/ Michael D. Williams_
        Michael D. Williams
        Texas Bar No. 21564330
        Federal ID No. 6982
        1177 West Loop South, Tenth Floor
        Houston, Texas 77027-9007
        (713) 629-1580
        (713) 629-5027 (facsimile)
        *mwilliams@brownsims.com*

        *Attorney-in-Charge for Defendant*
        *C4, LLC*

Of Counsel:
Elizabeth L. Sandoval
Texas Bar No. 24058095
Federal ID No. 1037409
Brown Sims
1177 West Loop South, Tenth Floor
Houston, Texas 77027-9007
(713) 629-1580
(713) 629-5027 (facsimile)
*esandoval@brownsims.com*

14

## <u>Certificate of Conference</u>

This is to certify that undersigned counsel conferred with counsel for Plaintiff and Plaintiff is opposed to Defendant's motion to transfer venue.

*/s/Elizabeth L. Sandoval*
Elizabeth L. Sandoval

## <u>Certificate of Service</u>

This is to certify that a true and correct copy of the foregoing document, was electronically filed with the Court and served in accordance with the Federal Rules of Civil Procedure as well as the Southern District of Texas' Local Rules via electronic filing, facsimile and/or certified mail, return receipt requested on August 30, 2021.

Stephen R. Cochell
Jonathan L. Slotter
The Cochell Law Firm, P.C.
5850 San Felipe, Suite 500
Houston, Texas 77057

*Attorney for Plaintiff*

*/s/Michael D. Williams*
Michael D. Williams
